## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Emilio P.,                                            File No. 26-CV-850 (JMB/SGE)

        Petitioner,

v.

Pamela Bondi, *Attorney General*; Kristi                    **ORDER**
Noem, *Secretary, U.S. Department of
Homeland Security*; Todd M. Lyons, *Acting
Director of Immigration and Customs
Enforcement*; David Easterwood, *Acting
Director, St. Paul Field Office Immigration
and Customs Enforcement*;

        Respondents.

Joseph D. Kantor, Guzior Maher Armbrecht, St. Paul, MN; and Sherene Mostaghimi, GAM Law, St. Paul, MN, for Petitioner Emilio P.

Trevor Brown, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and David Easterwood.

This matter is before the Court on Petitioner Emilio P.'s[1] Emergency Motion to Enforce the Court's Judgment. (Doc. No. 7.) On February 2, 2026, the Court granted Emilio P.'s habeas petition, ordered his immediate release in Minnesota, and entered judgment in his favor (Release Order). (Doc. No. 5.) Several hours after receiving the Release Order, however, Respondents returned Emilio P. to Mexico based on an

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

administrative departure agreement.  In the instant motion, Emilio P. requests an order requiring Respondents to permit his return to the United States as contemplated by the Court at the time of the Release Order.  Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and David Easterwood (together, Respondents) oppose.  For the following reasons, the Court grants the motion.

## FACTS

1.      Emilio P. is a Mexican citizen who has made his home in the United States for the last twenty-six years.  (Doc. No. 1 [hereinafter, "Pet."] ¶¶ 12–14.)[2]

2.      During that time, he became a homeowner and also became the owner of a successful business.  (Doc. 25 ¶ 2.)

3.      In the twenty-six years that he has lived in the United States, he has no record of committing any criminal offense.  (Doc. No. 1 ¶¶ 12–14.)

4.      On January 24, 2026, Emilio P. was shopping at a Walmart store.  (*Id.* ¶ 16.) ICE agents confronted him and conducted a warrantless arrest.  (*Id.*)

5.      Prior to that date, Respondents had not initiated any removal proceedings against Emilio P.  (*Id.*; Doc. No. 4 at 1.)

6.      Upon his arrest, Respondents took Emilio P. to the Bishop Henry Whipple

---

[2] Because Respondents did not contest any of the factual allegations in the Petition, the allegations therein are deemed admitted.  *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).  Additional factual findings are supported by the evidence presented by the parties in connection with this motion.

building at Fort Snelling; during the few hours he was there, agents confiscated his jacket, pants, wallet, and phone.  (Doc. No. 25 ¶ 4.)

7.       While at the Whipple building, Respondents did not give Emilio P. any documents regarding his rights or available resources.  (Doc. No. 25 ¶ 3; *see also* Doc. No. 15-1 at 3.)

8.       There is also no evidence indicating that Respondents permitted Emilio P. any opportunity to contact an attorney while detained in Minnesota.

9.       Then, later that day, Respondents flew Emilio P. to an ICE detention camp facility in El Paso, Texas.  (Doc. No. 15 ¶ 6.)

10.       During transport and after his arrival in El Paso, Emilio P. did not have the medication he needed to manage his various serious medical conditions, namely diabetes, high blood pressure, and high cholesterol.[3]  (Doc. No. 25 ¶¶ 8, 10.)

11.       After arrival in El Paso, Respondents repeatedly moved Emilio P. from one area of the detention camp facility to another, which impeded doctors from finding Emilio P. and ensuring he was given his needed medication.  (*Id.* ¶¶ 11–14.)  This repeated movement prevented doctors from ensuring that Emilio P. received his daily medication; Respondents also ignored a doctor's order to stop moving Emilio P. around the facility. (*Id.* ¶ 13.)

12.       Over the course of his ten-day confinement, Emilio P. received his proper

---

[3] Upon arrival in El Paso, Emilio P. asked officers for his medication.  (Doc. No. 25 ¶ 10.) An officer told Emilio P. that his medication was still in Minnesota; then asked Emilio P. if he wanted to return to Minnesota, laughed at him, and walked away.  (*Id.*)

dosage of medications on only three days.  (*Id.* ¶ 11.)  While in El Paso, Emilio P. felt ill as a result of his lack of access to his medication.  (*Id.* ¶ 14.)

13.    On January 28, 2026, four days after Emilio P. arrived in El Paso, ICE officers finally began the booking process.  (*See* Doc. No. 15-1 at 3.)

    a.    Until this point, Respondents repeatedly denied Emilio P.'s requests to make a phone call.  (Doc. No. 25 ¶ 15.)

    b.    During booking, Respondents for the first "advised [Emilio P.] of communication privileges." (Doc. No. 15-1 at 5.)  An ICE officer also provided him "with a list of free legal services providers."  (*Id.*) Nothing in the record demonstrates that Respondents provided Emilio P. with an opportunity to contact any legal service provider.

    c.    Additionally, at the time of booking, Emilio P. felt ill from his lack of access to medication and sufficient food—he reports "not thinking clearly." (Doc. No. 25 ¶ 19.)

    d.    During this initial intake procedure, officers presented Emilio P. with an I-210 Form for "voluntary departure" and asked him to sign.  (*Id.* ¶ 20; Doc. No. 15-1.)

    e.    Emilio P. had no opportunity to communicate with legal counsel either before or when he was presented with the I-210 Form.  (Doc. No. 15-1; Doc. No. 25 ¶¶ 15, 17–18.)

    f.    Although booking officers spoke to Emilio P. in Spanish, the record does not contain information about precisely what was said, and the

officers did not provide him with copies of any forms he signed or provide Spanish-language versions for him to read. (Doc. No. 25 ¶¶ 25, 26.) There is no evidence indicating that officers translated any particular provisions of the I-210 Form and no evidence that Emilio P. understood any particular provision of the form.

     g.     Therefore, the record does not show that Emilio P. knew of or understood the provisions of the I-210 Form concerning any of the consequences for failing to comply with voluntary departure or for re-entering the United States illegally, such as a civil penalty or the imposition of a ten-year bar from requesting cancellation of removal, adjustment of status, change in classification, or other relief. Nor does the record indicate that Emilio P. knew of or understood the provision of the I-210 Form that included the stipulation to "a prompt issuance of a final order of removal."

     h.     Finally, the record does not show that Emilio P. knew of or understood the provisions of the Addendum to the I-210 Form, which included an "acknowledge[ment]" that Emilio P. "will remain detained in DHS's custody pending departure." (*See* Doc. No. 15-1 at 1, 2.)

14.     Ultimately, Emilio P. signed the I-210 Form and an Addendum. (*Id.*) However, Emilio P.'s capacity to knowingly enter into an administrative departure agreement was significantly impaired at the time he signed the I-210 Form. In addition, absent any evidence that the form was translated into Spanish, Emilio P. did not understand

the contents of the I-210 Form that he signed. On this record, Emilio P. did not knowingly or intelligently enter into the voluntary departure agreement.

15.    The I-210 Form did not contemplate Emilio P.'s immediate departure from the country; instead, it purported to require Emilio P. to leave the United States on or before February 28, 2026—one month after Emilio P. signed it. (Doc. 15-1 at 1.) The administrative departure agreement does not extend past February 28, 2026, and while it contemplates noncompliance, it does not bind Emilio P.'s conduct after that date.

16.    Meanwhile, while Emilio P. was in El Paso, Emilio P.'s attorney in Minnesota struggled to locate and speak with his client. (Doc. No. 13 ¶¶ 2, 3; Doc. No. 21 ¶ 4.)

17.    On January 28 or 29, when Respondents finally permitted Emilio P. to make a phone call, they limited his phone time to just two minutes. (Doc. No. 25 ¶ 17.) With his two minutes, Emilio P. reached a friend in Minnesota and received confirmation that an attorney had been working on his case for some time. (*Id.* ¶ 18.)

18.    On January 30, 2026, Emilio P.'s Minnesota counsel filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition). (*See* Pet.) In his Petition, Emilio P. sought immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). (*See, e.g.*, Pet. at 16.)

19.    Immediately after Emilio P. filed his Petition, the Court issued a text-only Order (the "January 30 Order") which, among other things, expressly restrained Respondents from moving Emilio P. out of the District of Minnesota. (Doc. No. 3.) Additionally, to account for the probability that "Petitioner has already been removed from

Minnesota," the Court specifically ordered Respondents "to *immediately* return Petitioner to Minnesota *as soon as possible* and in any event no later than February 2, 2026." (*Id.* (emphasis added.))

20.     Respondents did not comply with the January 30 Order. Instead of returning Emilio P. to Minnesota, Respondents kept Emilio P. in custody in ICE's El Paso detention camp facility for several additional days. (Doc. No. 15 ¶¶ 6–9.)

21.     On February 2, 2026, at 10:18 a.m., Respondents filed a generic, two-paragraph response to the Petition which incorporated arguments made in *Avila v. Bondi*, No. 25-3248 (8th Cir. docketed Nov. 10, 2025). (Doc. No. 4.) In their response, Respondents could have—but did not—inform the Court of several critical facts.

      a.     Respondents omitted any reference to Emilio P.'s location and provided the Court with no indication that they had transported Emilio P. to El Paso.

      b.     Respondents failed to inform the Court of any efforts to return Emilio P. to Minnesota as required by the January 30 Order.

      c.     Similarly, Respondents failed to inform the Court that Emilio P. had signed a I-210 Form days earlier and, critically, did not inform the Court that they intended to return Emilio P. to Mexico. (*See generally id.*)

22.     That same morning, at 11:30 a.m. CT, the Court granted the habeas petition and entered judgment in Emilio P.'s favor. (Doc. No. 5.) Specifically, the Court ordered Respondents to release Emilio P. "*immediately in Minnesota without conditions*" no later

than the afternoon of February 3.  (*Id.* (emphasis added).)  The Court also ordered that Respondents file documentation confirming that they had returned all of Emilio P.'s property to him.

23.    Within fifteen minutes of the Court docketing the Release Order, Respondents' counsel duly forwarded this release order to his client in the ICE Enforcement and Removal Operations unit.  (Doc. No. 8 ¶ 8.)

24.    Although counsel provided Respondents with this Court's Release Order, Respondents failed to comply with the Release Order.  Respondents made no efforts to arrange for Emilio P.'s return to or release in Minnesota.  Instead, several hours after receiving the Release Order, Respondents arranged to transport Emilio P. by bus[4] from the detention camp facility to the point of entry into Mexico.  In violation of the Release Order, Respondents effectuated Emilio P.'s return to Mexico.  (Doc. No. 13 at 3.f–h; Doc. No. 25 ¶ 27.)

25.    Respondents also violated the provision of the Release Order that required Respondents to return all property taken from Emilio P. to him upon release and to submit documentation of this fact.  (*See* Doc. Nos. 5, 26, 29.)  Representatives for Respondents and their counsel will appear before the Court on March 3, 2026, for a contempt hearing on this issue.  (Doc. No. 29.)

26.    Once in Mexico, Emilio P. called a friend; during the phone call, Emilio P.

_____

[4] This mode of transport is curious, as an ICE officer's notes in Emilio P.'s file stated that Emilio P. "will be removed via ICE air."  (Doc. No. 15-1 at 5.)

learned for the first time of the Release Order.  (Doc. No. 15 ¶ 9.)

## DISCUSSION

Emilio P. now seeks an order under Federal Rule of Civil Procedure 70 to enforce the Judgment.[5]  (Doc. No. 7.)  Specifically, Emilio P. asks for an order authorizing his return to the United States.  (*See id.*)  Respondents make two arguments in opposition to the motion.  First, Respondents argue that the Court must deny the motion because a statutory provision requires that appeals from deportation and removal judgments be presented to the Bureau of Immigration Appeals, not to federal district court.  Second, relying on the I-210 Form, Respondents argue that the habeas judgment cannot be enforced because they already returned Emilio P. to Mexico as part of administrative departure agreement.  The Court disagrees and grants the motion, concluding that the administrative departure agreement is limited to a time period that has since lapsed, the motion does not require judicial review of a judgment rendered by an immigration judge, and Respondents' untimely challenge to this Court's granting of habeas relief lacks merit.

## I.    JURISDICTION

As a threshold matter, the Court observes that after a judgment is entered, as here, a district court "retains ancillary jurisdiction to 'manage its proceedings, vindicate its

---

[5] Emilio P. styled his motion as one for contempt sanctions and to enforce the judgment. The Court will not address the request for contempt sanctions at this time.

authority, and effectuate its decrees.'"[6] *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994)).  After all, if this was not the case, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.  *Id.* (quoting *Peacock v. Thomas*, 516 U.S. 349, 356 (1996)).

To the extent that Respondents suggest that Emilio P.'s habeas case is moot as a result of his deportation to Mexico, the Court disagrees.  It is true that the "in custody" requirement of the habeas statute is jurisdictional.  28 U.S.C. § 2241(c); *Carafas v. LaVallee*, 88 S. Ct. 1556, 1560 (1968).  However, the in-custody determination for purposes of determining habeas jurisdiction is not a moving target; rather, it is determined at the time the habeas action was filed.  *Spencer v. Kemna*, 118 S. Ct. 978, 983 (1998); *Rantesalu v. Cangemi*, No. 04-CV-1375, 2004 WL 898584 (D. Minn. Apr. 23, 2004).

This Court, like courts in sister circuits, consistently concludes that deported habeas petitioners remain within the Court's habeas jurisdiction so long as their petition was filed while they were still in federal custody.  *Rantesalu v. Cangem*, 2004 WL 898584, at *2–5 (concluding that Court had jurisdiction over habeas petition had been filed while petitioner was aboard deportation flight with federal-agent escorts); *Mohammed v. Attorney General*, No. 01-CV-0583 (MJD/SRN), 2001 WL 1631436 (D. Minn. Aug. 13, 2001) (same); *see also Chang v. INS*, 264 F.3d 378 (3d Cir. 2001) (concluding that district court maintains

---

[6] The Court also observes that "[h]abeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum." *Lopez v. Heinauer*, 332 F.3d 507, 511 (8th Cir. 2003) (citing *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)).

jurisdiction over habeas action filed before petitioner's ultimate removal from the United

States); *Steele v. Blackman*, 236 F.3d 130 (3d Cir. 2001) (same); *Fong v. Ashcroft*, No. 03-

CV-7261 (AKH), 2004 WL 1348994, at *1 (S.D.N.Y. June 15, 2004) (same); *Dennis v.*

*INS*, 301CV279 (SRU), 2002 WL 295100 (D. Conn. Feb. 19, 2002) (same).  Emilio P.'s

counsel filed his habeas petition on January 30, 2026.  (Doc. No. 1.)  There is no dispute

that Emilio P. was in an ICE detention camp facility in El Paso on that day and for several

days afterward.  (Doc. No. 15 ¶¶ 6–9.)  Because Emilio P. was undisputably in ICE custody

at the time his petition was filed and at the time the Court rendered judgment in his favor,

the Court maintains jurisdiction to enforce its judgment in this action notwithstanding

Emilio P.'s current status.

## II.    EXPRESS TEMPORAL LIMITATIONS OF THE I-210 FORM

The I-210 Form that Emilio P. signed included a promise to leave the United States

at some point between January 28, 2026 and February 28, 2026.[7]  Importantly,  nothing in

---

[7] The Court in concerned that the administrative departure agreement is unenforceable
because Respondents prohibited Emilio P. from exercising his Fifth Amendment right to
counsel prior to signing the I-210 Form.  The Due Process Clause of the Fifth Amendment
applies to "all 'persons' within the United States"—not just citizens—"whether their
presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S.
578, 693 (2001).  As a result, "the Fifth Amendment entitles aliens to due process of law
in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Al Khouri
v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004) (acknowledging that non-citizens "are
entitled to the Fifth Amendment's guarantee of due process of law in deportation
proceedings").  The Fifth Amendment rights of non-citizens includes the right to obtain
and access counsel.  *See Bivot v. Gonzales*, 403 F.3d 1094, 1098–99 (9th Cir. 2005)
(concluding that right to counsel includes ensuring non-citizens have "reasonable time to
locate counsel and permit counsel to prepare" for immigration proceedings); *Orantes-
Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990) (observing that non-citizens
"have a due process right to obtain counsel of their choice at their own expense); *see also
Al Khouri*, 363 F.3d at 464 ("In certain circumstances, depriving an alien of the right to

the signed I-210 Form obligates Emilio P. to voluntarily depart the United States after February 28, 2026. In effect, the administrative departure agreement has expired. Given this conclusion, the signed I-210 Form has no effect on the Court's consideration of the motion to enforce its habeas judgment.[8]

### III. INAPPLICABILITY OF SECTION 1252(a)(2)(B)

Respondents argue that Emilio P.'s requested relief is not available because federal district courts are precluded by 8 U.S.C. § 1252(a)(2)(B)(i) from reviewing "any judgment regarding the granting of relief under section . . . 1229c," which, for its part, provides for voluntary departure agreements both before and after removal proceedings have begun.

---

counsel may rise to the level of a due process violation."). Respondents have tacitly acknowledged that the Fifth Amendment imbues non-citizens with such rights in other litigation in this District, *see The Advocates for Human Rights v. U.S. Dep't of Homeland Sec., et al.*, No. 26-CV-749, Doc. No. 70 at 12–13 (D. Minn. Feb. 3, 2026), and some courts have acknowledged a Fifth Amendment challenge to the voluntariness of an uncounseled I-210 Form in habeas actions, *e.g.*, *Pimentel Ortega v. Warden*, No. 1:25-CV-1856 (DAD/CSK), 2026 WL 482682 (E.D. Cal. Feb. 19, 2026); *Cruz Garcia v. Hermosillo*, 2:26-CV-0184 (TMC), 2026 WL 183571 (W.D. Wash. Jan. 23, 2026). The parties in this case, however, have not presented such arguments to this Court, and the Court declines to address the issue at this time.

[8] The Court also is concerned that, given the Court's findings on this record concerning capacity, coercion, and the failure to provide a Spanish-language version of the I-210 Form, Emilio P. did not knowingly or voluntarily enter into the administrative departure agreement, and the agreement is unenforceable. In addition, there is nothing in the record before the Court that can establish that Respondents complied with the applicable regulation regarding who is authorized to sign an administrative voluntary departure agreement. *See* 8 C.F.R. § 240.25(a) (including a list of officers authorized to sign such agreements). In this case, the I-210 Form includes the handwritten name of an individual and a signature of a second person who apparently signed the document on behalf of the person whose name is written on the form. (Doc. No. 15-1 at 1 and 2 (the name "Joel Garcia" is handwritten on the form and a second person whose name is illegible and unknown actually signed the form).)

8 U.S.C. § 1252(a)(2)(B)(i); *see also* 8 U.S.C. § 1229c.  This argument misses the mark; the provisions of section 1252(a)(2)(B) are not applicable to the instant motion for three reasons.  First, section 1252 does not contemplate a scenario in which an administrative departure agreement obligating a return to Mexico conflicts with a lawful order requiring immediate return to Minnesota and with a lawful habeas judgment requiring immediate release in Minnesota.

Second, the plain language of section 1252(a)(2)(B)(i) precludes review of "any judgment."  Respondents cite to no legal authority that interprets the word "judgment" in that provision to include an administrative departure agreement entered into prior to commencement of removal proceedings before an immigration judge.

Third, although the Court has made findings concerning Emilio P.'s capacity to sign the I-210 Form and understanding of the terms of that document, the Court is not reviewing some other judicial or administrative officer's findings.  Nor is the Court reviewing the merits of any removal or deportation decision or otherwise issuing a decision on the voluntariness of the I-210 Form.

For each of these reasons, section 1252(a)(2)(B) does not preclude the Court from considering the motion to enforce its habeas judgment.

## IV.    RESPONDENTS' MERITLESS CHALLENGE TO HABEAS RELIEF

Next, Respondents argue that, because Emilio P. signed the I-210 Form before the habeas action was filed, the habeas proceedings are somehow null and void.  (Doc. No. 15 ¶ 7; *see also* Doc. No. 23 at 3–4.)  The Court cannot accept this argument because it is made for the first time in response to the motion to enforce the judgment and because it

misstates the facts.

In response to the Court's initial order requiring Respondents to show cause why the Court should not grant the habeas petition, Respondents made a single argument, incorporating the same argument they made in another case. Respondents did not mention that Emilio P. had signed the I-210 Form[9] and they did not argue at that time that the administrative departure agreement renders the Court's habeas judgment null and void. Nor did Respondents make any motion to vacate the habeas judgment on this basis. The Court concludes that Respondents are, therefore, precluded from raising a new defense to the petition, and habeas relief in general, at this time.

Even assuming it was timely, however, the argument lacks merit. Nothing in the I-210 Form or in the voluntary departure process can be interpreted as a waiver of a detainee's habeas rights. In fact, the waiver on the face of an I-210 Addendum provides that a non-citizen waives only "[their] opportunity to file any and all applications for relief or protection from removal, deportation, or exclusion *under the immigration laws*." (Doc. No. 15-1 at 2 (emphasis added).) A writ of habeas corpus does not arise "under the immigration laws." Instead, as explained in the Court's February 2 Order (Doc. No. 5 at 3), the guarantee of habeas review arises under the U.S. Constitution. *See, e.g.*, *Smith v. Bennett*, 365 U.S. 708, 898 (1961) ("We repeat what has been so truly said of the federal writ: there is no higher duty than to maintain it unimpaired." (quotation omitted)). In

---

[9] Respondents did not even inform the Court that Emilio P. was in El Paso (and had been for well over a week) in its February 2 response to the Petition.

addition, contrary to the language of the I-210 Form, a habeas petition is not an application to preclude removal, deportation, or exclusion. Respondents point to no DHS rule, act of Congress, or provision of the I-210 Form that plausibly purports to waive a detainee's right to seek habeas relief after signing the I-210 Form.

Finally, Respondents' counsel provides no explanation why they did not make this argument before, and the Court can only presume that Respondents deliberately decided not to inform counsel of the existence or terms of the administrative departure agreement prior to the seemingly irreversible act of returning Emilio P. to Mexico. More troubling, Respondents had clear notice of the Court's January 30 Order requiring the immediate return of Emilio P. to Minnesota and the Court's Release Order requiring Emilio P.'s immediate release in Minnesota. These orders were *not* conditioned on Emilio P. being unburdened by administrative documents like, for example, an I-210 Form. Despite notice of the Court's unequivocal and unconditional January 30 Order requiring the immediate return of Emilio P. to Minnesota, Respondents simply did not comply. They kept Emilio P. in their El Paso detention camp facility for days afterward. Likewise, despite notice of the Court's unequivocal order to release Emilio P. *in Minnesota*, which was provided to Respondents by counsel before 11:00 a.m. El Paso time on February 2, 2026, Respondents again chose not to comply. Instead of arranging for Emilio P. to fly to Minnesota so he could be released as ordered, they placed him on a bus and drove him to the U.S.-Mexico border so he could be deported to Mexico. Thus, the undisputed record makes clear that Respondents did not comply with the Court's lawful orders to return Emilio P. to

15

Minnesota[10] and to release him.[11]  This Court must exercise its inherent power to enforce compliance with its lawful orders. *Jenkins*, 516 F.3d at 1083.  At the end of the day, "[t]he government cannot hinder execution of a properly issued writ of habeas corpus by transferring custody of a petitioner or placing [them] aboard an airplane" or a bus. *Fong v. Ashcroft*, 2004 WL 1348994, at *1.  Therefore, the Court grants the motion.[12]  *See Rantesalu*, 2004 WL 898584.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Petitioner Emilio P.'s Motion to Enforce the Judgment (Doc. No. 7) is GRANTED.

2.    Respondents shall allow Emilio P. to re-enter the United States on or before June 1, 2026.

    a.    Respondents shall facilitate the reentry of Emilio P. into the United States and shall bear the cost of Emilio P.'s travel to Minnesota.

    b.    Respondents shall also provide any requisite travel documents to Emilio P.'s counsel within fourteen days of counsel's request.

---

[10] To the extent that Respondents assert the January 30 Order does not prohibit removal from the United States (*see* Doc. No. 14 at 3), the Court disagrees.  Respondents cannot return Emilio P. to Minnesota as immediately required to do by the January 30 Order while at the same time removing Emilio P. from the United States.  Departure—voluntary or otherwise—is necessarily prohibited by the terms of the January 30 Order.

[11] Although Respondents seem to emphasize the deadlines in the Court's orders (*see* Doc. No. 14 at 3), this focus mischaracterizes the clear directive of the Court, which required the immediate return of Emilio P. to Minnesota "as soon as possible but in any event no later than February 2, 2026" (Doc. No. 3).

[12] While in the United States, Emilio P. may wish to seek review of the validity of the I-210 Form in an appropriate forum.

    c.    Counsel for Emilio P. must provide Respondents with fourteen days' advanced notice of Emilio P.'s information regarding his travel plans and anticipated date of entry.

    d.    Respondents shall not detain Emilio P. upon his reentry to the United States and shall not re-detain Emilio P. at any time in violation of the Court's habeas judgment.

3.    The Court stays entry of this order for a period of seven days to permit Respondents to file an immediate appeal.


Dated: March 2, 2026                                  /s/ *Jeffrey M. Bryan*
                                                  Judge Jeffrey M. Bryan
                                                  United States District Court